MAITLAND A. WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42.   Promulgated July 29, 1946.

*William Wallace Booth, Esq.*, for the petitioner.
*J. Harrison Miller, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: The above entitled proceeding involves deficiencies in income tax, and fraud penalties, as follows:

| Year | Deficiency | Penalty |
|------|-----------:|--------:|
| 1936 | $722.42 | $665.77 |
| 1937 | 988.18 | 494.09 |
| 1938 | 8,376.42 | 4,188.21 |
| 1939 | 2,904.87 | 1,452.44 |
| 1940 | 2,817.49 | 2,678.76 |

The only issue in controversy relates to the proper method of computing the fraud penalty in the taxable years 1936 and 1940. A stipulation of facts was filed, and certain waivers, and concessions were made at the trial. The facts as stipulated are so found. Those material here may be summarized as follows:

Petitioner, an individual, filed his income tax returns for the periods involved with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh, Pennsylvania. He filed an individual income tax return for the calendar year 1936, disclosing a tax liability of $490.80, which amount was paid in installments during 1937. During 1939, a deficiency of $609.11 in income tax was assessed for the year 1936, which was paid on September 23, 1939. On July 29, 1942, a deficiency notice was mailed to petitioner, disclosing a tax liability of $1,822.33 for the year 1936. After allowing credit for the $490.80 shown on the return and the $609.11 assessed in 1939, a deficiency in tax of $722.42 was determined, and a fraud penalty of 50 per cent of the difference between the $1,822.33 tax liability and the $490.80 ($1,331.53), or $665.77.

Petitioner filed an individual income tax return for the calendar year 1940, disclosing a tax liability of $2,000.68, which was paid in installments in the year 1941. In November 1941, petitioner filed an amended return for 1940, reporting an additional income tax liability of $2,540.02, which was assessed and paid during December 1941. The deficiency notice mailed to petitioner on July 29, 1942, disclosed a tax liability of $7,358.19. After allowing credit for the amount of $2,000.68 shown on the return, and the $2,540.02 assessed on the amended return, the respondent determined a deficiency of $2,817.49 in income tax and a fraud penalty of 50 per cent of the difference between the $7,358.19 tax liability and the $2,000.68 as shown on the return ($5,357.51), or $2,678.76.

Petitioner concedes the total tax liability for 1936 was $1,822.33 and that for the year 1940 was $7,358.19. He concedes that the 50 per cent fraud penalty is applicable to the deficiencies for those respective years. He contends, however, that the amount of the penalty for 1936

should be only $361.21, or 50 per cent of the difference between the tax liability of $1,822.33, and the tax paid which was $1,099.91.

Similarly, for the year 1940, petitioner contends that the amount of the fraud penalty should be only $1,408.75, or 50 per cent of the difference between the total tax liability of $7,358.19 and the total paid, which was $4,540.70. Hence, the narrow issue presented is one of construction. Is the 50 per cent fraud penalty imposed by section 293 (b) of the Revenue Act of 1936 and the Internal Revenue Code,[1] applicable to the taxable years involved, to be computed on the difference between the tax liability and the amount shown on the taxpayer's return?

Section 293 (b) provides "if any part of any deficiency is due to fraud with intent to evade tax," as is the case here, then 50 per centum of the *total* amount of the deficiency shall be assessed, collected, and paid. The term "deficiency" is defined in section 271 (a) of the code.[2] The first clause of section 271 (a) makes it clear that the "deficiency" is the difference between the tax liability and the amount shown on the return. Petitioner, however, stresses the second clause of the section, providing for certain increases and credits to the amount shown on the return. From this language he draws the conclusion that the term "deficiency" as used in section 293 (b) means that part of the tax remaining unpaid as set forth in the notice of deficiency. We think this argument is fallacious. It not only fails to give proper significance to the first clause of section 271 (a), but disregards the word "total" as used in section 293 (b) of the code. The amounts by which the amount shown on the return is to be "increased by the amounts previously assessed (or collected without assessment)" are referred to "as a deficiency" and not as the deficiency. Thus, it would seem that the phrase "total deficiency" as used in section 293 (b) where fraud is present can only mean the amount which is the difference between the tax liability and the amount shown on the return.

---

[1] Section 293 (b) of the Internal Revenue Code applicable to the year 1940 does not materially differ from the same section in the Revenue Act of 1936, and reads as follows:

"SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY.

\* \* \* \* \* \* \*

"(b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2)."

[2] Section 271 (a) is identical to the same numbered section in the Revenue Act of 1936, and reads as follows:

"SEC. 271. DEFINITION OF DEFICIENCY.

"As used in this chapter in respect of a tax imposed by this chapter 'deficiency' means—

"(a) The amount by which the tax imposed by this chapter exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax."

The return referred to undoubtedly means the original return due at the times provided by law.

Prior to the enactment of the Revenue Act of 1918, the fraud penalty was covered by section 3176, Revised Statutes, and in the sum of 100 per cent upon the whole tax liability. By section 250 (b) of that act it was provided:

If the understatement is false or fraudulent with intent to evade the tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns willfully made, but in addition to other penalties provided by law for false or fraudulent returns, there shall be added as part of the tax 50 per centum of the amount of the deficiency.

The legislative history of this provision leaves no doubt as to the Congressional intent that the penalty was to be computed upon the total amount of the actual tax liability understated on the return. Thus the Report of the Conference Committee on the Revenue Act of 1918 states:

Amendments Nos. 193 and 194: The House Bill provided that if a false or fraudulent return is made with intent to evade the tax, in addition to other penalties provided by law for false or fraudulent returns, there should be added as part of the tax 100 per cent of the *amount of tax understated*. The Senate amendment reduces the penalty to 50 per cent of *the tax understated* and provides that this penalty should be in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended; and the House recedes. [Italics supplied.]

There is not the slightest indication in the history of section 271 (a) of the 1932 and 1934 Acts, in which the term "deficiency" is defined, that it was intended to change the existing scheme for imposing a fraud penalty and reduce the penalty imposed under prior laws by 50 per cent of the amount of the understatement in tax which had been paid prior to the discovery of the fraud or the assertion of a penalty. The construction for which petitioner argues would assume an intent on the part of Congress to relieve from any penalty a taxpayer, guilty of fraud, who, finding the collector had discovered his fraud, quickly filed an amended return and paid the tax before the deficiency notice could be mailed.

We can find no instance where we or any other court has approved the petitioner's construction. It would appear that, since the Revenue Act of 1918, the respondent has consistently computed the penalty upon the total amount understated on the return and in every instance in those cases coming before us of which we are aware, we have approved the computation. In *J. S. McDonnell*, 6 B. T. A. 685, we had the specific question here involved. There a deficiency had been determined and paid. Subsequently additional unreported income was discovered and a second deficiency determined together with a fraud penalty computed upon the total of both deficiencies. We held that the penalty was to be computed upon the entire excess of the tax liability over that shown on the return. This method of computation

was also approved by us in *John R. Hanby*, 26 B. T. A. 670, and *Garden City Feeder Co.*, 27 B. T. A. 1132; reversed on other grounds, 75 Fed. (2d) 804; *John Kehoe*, 34 B. T. A. 59; reversed, 105 Fed. (2d) 552; Circuit Court reversed by Supreme Court, 309 U. S. 277. In *Thomas J. McLaughlin*, 29 B. T. A. 247, a deficiency had been determined, assessed, and paid. Subsequently fraud was discovered and a second deficiency was determined, consisting of only the fraud penalty computed upon the paid deficiency. This penalty we sustained.

We hold that by the phrase "total amount of the deficiency," as used in section 293 (b) of the code, is meant the total understatement in tax liability on the return, whether later determined in one or in several deficiencies.

*Decision will be entered for the respondent*